IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

Jason Gaza

    Plaintiff,                                  CIVIL ACTION FILE NO.

v.

West Florida – MHT, LLC d.b.a. Memorial Hospital of Tampa
\and Medicredit Inc.

    Defendants.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, brings this action against Defendants, on the grounds and the amounts set forth herein.

### I. PRELIMINARY STATEMENT

This action arises out of the facts and circumstances surrounding phone calls made to the Plaintiff. Plaintiff, an individual, institutes this action for actual and statutory damages against the defendant and the costs of this action against Defendants for violations of the Telephone Consumer Protection Act (hereinafter "TCPA") 47 U.S.C. 227 et seq. In addition, Defendants violated the Fair Debt Collection Practice Act by continuing to contact Plaintiff in violation of directive and in violation of law because Defendants continued to contact Plaintiff after Plaintiff had refused to pay. In addition, Defendants misrepresented to Plaintiff the amounts of the bills that Plaintiff could have reasonably expected to incur and Defendant attempted to collect amounts in excess of the amounts that Defendants told Plaintiff that Plaintiff would be billed. Plaintiff's reliance on Defendants' initial representations were reasonable, though Defendant's

conduct was both unjust and deceptive as outlined above and below, in the common law counts included in this action.

## II. PARTIES

1. Plaintiff is a natural person residing in Pasco County, Florida.

2. Defendant Memorial Hospital of Tampa (hereafter "Memorial") is hospital which provides medical treatment, creates and maintains medical records and has agents employed whom call on their behalf using Automatic Telephone Dialing Systems as defined below.

3. Defendants, Medicredit Inc. (hereafter "Medicredit") is a debt collector as defined by the Fair Debt Collection Practices Act and acted in concert with Memorial Hospital of Tampa and each are governed by the same principals and are one same for the purposes of this action. (15 U.S.C. 1692)

4. III. JURISDICTION AND VENUE

5. Jurisdiction is conferred on this Court by 28 U.S.C. 1331 and 28 U.S.C. 1367.

6. Venue is this District is proper in that the Defendants transact business here and the conduct of underlying the complaint occurred in Pasco County, Florida, which falls under the jurisdiction of the Tampa Division of the Middle District Court.

## STATUTORY STRUCTURE HIPAA

7. Under Health Insurance Portability and Accountability Act of 1996 ("HIPAA")[1] , an individual has the right to amend protected health care information: (45 CFR 164.526)

   (a) Standard: Right to amend.
   (1) Right to amend. An individual has the right to have a covered entity amend protected health information or a record about the individual in a designated record set for as long as the protected health information is maintained in the designated record set.

(2) Denial of amendment. A covered entity may deny an individual's request for amendment, if it determines that the protected health information or record that is the subject of the request:
(i) Was not created by the covered entity, unless the individual provides a reasonable basis to believe that the originator of protected health information is no longer available to act on the requested amendment;
   (ii) Is not part of the designated record set;
   (iii) Would not be available for inspection under § 164.524; or
   (iv) Is accurate and complete.

8. The response by a covered entity must be within a certain period of time below and the response must be in writing: (45 CFR 164.526)

   (2) *Timely action by the covered entity.*

   (i)    The covered entity must act on the individual's request for an amendment no later than 60 days after receipt of such a request, as follows.

        A) If the covered entity grants the requested amendment, in whole or in part, it must take the actions required by paragraphs (c)(1) and (2) of this section.

        (B) If the covered entity denies the requested amendment, in whole or in part, it must provide the individual with a written denial, in accordance with paragraph (d)(1) of this section.

        (ii) If the covered entity is unable to act on the amendment within the time required by paragraph (b)(2)(i) of this section, the covered entity may extend the time for such action by no more than 30 days, provided that:

        (A) The covered entity, within the time limit set by paragraph (b)(2)(i) of this section, provides the individual with a written statement of the reasons for the delay and the date by which the covered entity will complete its action on the request; and

        (B) The covered entity may have only one such extension of time for action on a request for an amendment. (45 CFR 164.526).

        (c) Implementation specifications: Accepting the amendment. If the covered entity accepts the requested amendment, in whole or in part, the covered entity must comply with the following requirements.

(1) Making the amendment. The covered entity must make the appropriate amendment to the protected health information or record that is the subject of the request for amendment by, at a minimum, identifying the records in the designated record set that are affected by the amendment and appending or otherwise providing a link to the location of the amendment.

(2) Informing the individual. In accordance with paragraph (b) of this section, the covered entity must timely inform the individual that the amendment is accepted and obtain the individual's identification of and agreement to have the covered entity notify the relevant persons with which the amendment needs to be shared in accordance with paragraph (c)(3) of this section.

(3) Informing others. The covered entity must make reasonable efforts to inform and provide the amendment within a reasonable time to:

(i) Persons identified by the individual as having received protected health information about the individual and needing the amendment; and

(ii) Persons, including business associates, that the covered entity knows have the protected health information that is the subject of the amendment and that may have relied, or could foreseeably rely, on such information to the detriment of the individual.

**STATUTORY STRUCTURE FLORIDA STATUTE 395.3025**

9. F.S. 395.3025(1) states that: any licensed facility shall, upon written request, and only after discharge of the patient, furnish, in a timely manner, without delays for legal review, to any person admitted therein for care and treatment or treated thereat, or to any such person's guardian, curator, or personal representative, or in the absence of one of those persons, to the next of kin of a decedent or the parent of a minor, or to anyone designated by such person in writing, a true and correct copy of all patient records, including X rays, and insurance information concerning such person, which records are in the possession of the licensed facility, provided the person requesting such records agrees to pay a charge. The exclusive charge for copies of patient records may include sales tax and actual postage, and, except for non-paper records that are subject to a charge not to exceed $2, may not exceed $1 per page. A fee of up to $1 may be charged for each year of records requested. These charges shall apply to all records furnished, whether directly from the facility or from a copy service providing these services on behalf of the facility. However, a patient whose records are copied or searched for the purpose of continuing to receive medical care is not required to pay a charge for copying or for the search. The licensed facility shall further allow any such person to examine the original records in its possession, or microforms or other suitable reproductions of the records, upon such reasonable terms as shall be imposed to assure that the records will not be damaged, destroyed, or altered.

## IV. STATUTORY STRUCTURE TELEPHONE CONSUMER PROTECTION ACT

The Telephone Consumer Protection Act, 47 U.S.C. 227 ("TCPA") amended the Federal Communications Act 47 U.S.C. 151, et seq. ("FCA") to address the uses of automatic telephone dialing systems, artificial or prerecorded voice messages, SMS text messages reviewed by cell phones, and the use of fax machines to send unsolicited advertisements.

10. Under the TCPA "automatic telephone dialing system" (hereinafter "ATDS") means equipment which has the capacity-

    (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and

    (B) to dial such numbers.

    See, 47 U.S.C. 227 (a)(1).

11. Under the TCPA, it is unlawful to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice message to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

12. Under the TCPA, a person or entity may, if otherwise permitted by the laws of the rules of the court of a State, bring in an appropriate court of that State:

    (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,

    (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or

(C) both such actions.

If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph. 47 U.S.C. 227 (b)(3).

## V. STATUTORY STRUCTURE FAIR DEBT COLLECTION PRACTICES ACT

13. The term "consumer" means any natural person obligated or allegedly obligated to pay any debt.

14. The term "debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

15. The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

16. A debt collector may not communicate with a consumer in connection with the collection of any debt at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer. (15 U.S.C. 1692c)

17. If the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except (1) to advise the consumer that the debt

collector's further efforts are being terminated; (2) to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or (3) where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy. (15 U.S.C. 1692c)

## VI. FACTUAL ALLEGATIONS

18. Plaintiff underwent a diagnostic procedure at the Defendants' facility on or around November 8, 2014.

19. This diagnostic procedure was required in part to obtain medical clearance for Federal Medical Certification that may be used for employment.

20. Defendants represented to Plaintiff that results would be ready within in a week but instead it several weeks.

21. Plaintiff called Defendants several times and representatives on several occasions expressed confusion on what had happened to the study and why it was taking so long, on one occasion cited hardware issues and on another occasion stated the study was lost.

22. Once the results were released they were extremely vague and disorganized according to typical standard of care in preparing such reports.

23. Additionally even though Plaintiff had undergone three separate surgical procedures and obtained industry recognized proof of the effects of the surgical procedures the Defendant's results were at approximately 50% worse than original baseline prior to treatment.

24. Defendants' erroneous results reflected possible degenerative neurological disease, brain injury, brain tumor, heart disease, or kidney disease of which Plaintiff has no history of.

25. Defendants' report indicated that Plaintiff should return for treatment at their facility and that Plaintiff should limit activity.

26. Plaintiff shared his study's results with his treating surgeon who practices medicine at Stanford Hospital, Palo Alto, California.

27. This Surgeon conveyed to the Plaintiff that the results were impossible using the words "no way" and that the Plaintiff needed to get another study performed.

28. In November 2014, Plaintiff orally requested the raw data of the study so he could consult with an expert to determine if the data had been misinterpreted. The sleep center manager promised the raw data would be sent that day or the next day, however the data was never sent.

29. On December 30, 2014 and January 21, 2015 Plaintiff's attorney sent a notarized copy of HIPAA release for medical records (raw data) to both Plaintiff's regular address and Plaintiff's legal department however Defendant never sent records to Plaintiff or Plaintiff's Attorney.

30. The letters sent on both December 30, 2014 and January 21, 2015 also requested that the Defendant rescore and amend the medical records to reflect correctly before the Plaintiff incur any additional time or expenses however thus far Memorial has refused.

31. As a consequence of Memorial's actions Plaintiff underwent another study at Mayo Clinic Jacksonville and the results of that study indicated results that did not require medical treatment confirming that the Memorial's study was in fact erroneous.

32. Even though Memorial knew or had reason to know that their study was erroneous they continued to bill the Plaintiff in spite of this and then send him to a debt collection agency for continued collection.

33. On March 26, 2015 Plaintiff sent a letter to Medicredit Inc, Memorial's agent and collection agency, this letter revoked consent to be called with automated telephone dialing systems and provided a refusal to pay such balance.

34. Nevertheless, Memorial's Collection Agency Medicredit continued to call Plaintiff's cell phone with an ATDS or pre-recorded message without express consent.

35. Memorial, received pre-authorization from Plaintiff's insurance and stated that the Plaintiff's sole responsibly was a fixed amount which the Plaintiff forwarded prior to the study.

36. Despite Memorial stating the Plaintiff's financial responsibility and taking payment they sent him another bill for an additional several hundred dollars, the amount alleged by Medicredit in collections.

## VI. TCPA VIOLATIONS

37. Plaintiff repeats, re-alleges, and incorporates by reference the foregoing paragraphs. The Defendants violations of the TCPA include, but are not limited to, the following:

38. The actions of the Defendants individually and collectively violated the TCPA.

39. By Memorial's agent calling the Plaintiff's cell phone without express consent with an ATDS Memorial violated the TCPA. 47 U.S.C. 227

40. By Memorial's agent calling the Plaintiff's cell phone with an ATDS knowing they did not have express consent Memorial violated the TCPA willfully and knowingly. 47 U.S.C. 227

## BREACH OF FIDUCIARY DUTY

41. Defendants breached their fiduciary duty under F.S. 395.3025 as the medical records owners for failing to submit the study raw data without delay to the Plaintiff or Plaintiff's counsel for legal review. Plaintiff was a client of Defendant. Defendant owed Plaintiff a duty under the above referenced statute and also a duty of good faith and fair dealing.

42. Defendants breached their fiduciary duty under HIPAA for failing to amend the Plaintiff's medical records within 60 to 90 days, as required by law.

43. As consequence Plaintiff incurred actual damages because of protracted concern about the Plaintiff's medical condition, having incorrect medical information documented, and the expense incurred because of the necessity of disabusing the Defendant's erroneous study.

### FRAUDULENT MISREPRESENATION

44. Because Memorial fraudulently misrepresentation the true amount of the Plaintiff's responsibility, the Plaintiff suffered damages. Specially, Defendants indicated to Plaintiff that the amount due and owing for the services were substantially less that the amount Defendants ultimately ended up billing Plaintiff and the amount Defendant ended up trying collect from Plaintiff.

### FRAUDULENT CONCEALMENT

45. Memorial is liable to the Plaintiff because they fraudulently concealed medical records that were required in order for the Plaintiff to evaluate his state of health and legal rights, by concealing the results of the medical services and failing to disclose the content procedure and testing, which ultimately resulted in Plaintiff being required to under duplicative studies in order to obtain accurate medical data about Plaintiff's condition.

46. Memorial concealed Plaintiff's records from him in order to avoid liability.

47. As a result of Memorial's conduct the Plaintiff suffered actual damages in the form of additional and duplicative medical procedures with other medical care providers at great expense to Plaintiff.

### UNJUST ENRICHMENT

48. Because the Plaintiff paid Memorial for services that were not correctly rendered Memorial was unjustly enriched and monies should be returned to the Plaintiff. Plaintiff reasonably relied upon the representation made by Defendant in regards to his medical examination and the

underlying medical treatment and study. Defendants failed to conduct itself in a medically appropriate manner, including with respect to debt collection matters, and failed to perform the services for which Plaintiff paid Defendant. Defendant should not be permitted to collect for work that it did not perform and did not complete and Defendant should not be permitted to retain or compel payment for services that it did not provide as agreed for the benefit of Plaintiff.

## FAIR DEBT COLLECTION PRACTICES ACT

49. By Medicredit continuing to communicate with the Plaintiff after the having knowledge of the Plaintiff's refusal to pay, Medicredit violated the FDCPA. (15 U.S.C. 1692(c)(3)(c))

50. By Medicredit continuing to call the Plaintiff despite having knowledge that making any phone call at any time or to place to the Plaintiff was inconvenient, Medicredit violated the FDCPA, by calling Plaintiff with an intent to annoy or harass. (15 U.S.C. 1692(c)(1))

WHEREFORE, Plaintiff prays that judgment be entered against the Defendants for the following:

(1) Statutory damages pursuant to TCPA 47 U.S.C. 227 (b)(3);

(2) Statutory damages pursuant to TCPA 47 U.S.C. 227 (d)(3);

(3) Statutory damages pursuant to FDCPA 15 U.S.C. 1692k(1)

(4) Actual damages pursuant to FDCPA 15 U.S.C. 1692k(2)

(5) Attorney's fees pursuant to FDCPA 15 U.S.C. 1692k(3)

(6) Costs

(7) Actual damages for Florida Common Law claims, with a reservation of rights to include punitive damages should the ultimate facts support the same.

(8) Injunctive relief to provide for correction of medical records as a fiduciary duty of HIPAA and production of medical records pursuant to F.S. 395.3025(1)

(9) Such other and further relief that the Court deems just and proper.

<u>**s/W. John Gadd**</u>

W. John Gadd

FL Bar Number 463061

**Bank of America Building.**
2727 Ulmerton Rd. Ste. 250

Clearwater, FL 33762

Tel – (727)524-6300

Email – wjg@mazgadd.com