UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JASON GAZA,

    Plaintiff,

v.                                                            CASE NO.  8:15-cv-1893-T-26EAJ

WEST FLORIDA– MHT, LLC d/b/a
Memorial Hospital of Tampa, and
MEDICREDIT, INC.,

    Defendants.
                                           /

**O R D E R**

**UPON DUE AND CAREFUL CONSIDERATION** of Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint and Motion to Strike (Dkt. 23), Plaintiff's Response (Dkt. 26), and the allegations of the Second Amended Complaint (Dkt. 20), the Court concludes the motion to dismiss should be granted in part and denied in part and the motion to strike should be granted.

The Court finds that, on balance, the second amended complaint is sufficient to withstand the specific attack by Defendant West Florida – MHT, LLC (the Hospital) regarding whether it constitutes a "shotgun pleading."[1]  The Hospital's challenge to the

---

[1] A shotgun pleading "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against."  Weiland v. Palm Beach Ctny.

specificity of paragraphs 51 and 52 in this regard is unavailing. Paragraph 51 refers to "Defendant's erroneous study," which logically must mean the sleep study conducted by the Hospital, not Medicredit. The unidentified "defendant" referred to in paragraph 52 presumably means the Hospital as it is the entity that would obtain pre-authorization to conduct the study and would discuss the charges with the patient before conducting the study. Thus, the Court finds that the second amended complaint provides more than mere legal conclusions to establish "facial plausibility" concerning the conduct of the defendants with regard to which one committed which acts. See Ashcroft v. Iqbal, 556 U.S. 662, 678-79, 129 S.Ct. 1937, 1949-50, 173 L.Ed.2d 868 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 16 L.Ed.2d 929 (2007)). That the second amended complaint does not fall into the shotgun category or lack specificity, however, does not necessarily save it from other flaws.

With respect to the Hospital's contention that the particularity requirement of Federal Rule of Civil Procedure 9(b) for fraudulent misrepresentation and concealment was not met, the Court finds that the second amended complaint is pleaded with sufficient particularity. Whether the allegations state a claim for relief against the Hospital is a another matter. For fraudulent misrepresentation and concealment, a plaintiff must allege and prove "(1) a false statement of material fact; (2) known by the defendant to be false at the time it was made; (3) made for the purpose of inducing the plaintiff to act in reliance

---

Sheriff's Office, 792 F.3d 1313, 1323 (11th Cir. 2015) (footnote and citations omitted).

thereon; (4) action by the plaintiff in reliance on the correctness of the representation; and (5) resulting damage or injury." See Black v. Advanced Neuromodulation Sys., Inc., 2014 WL 1303656, at *10 (N.D. Fla. Mar. 27, 2014) (quoting National Ventures, Inc. v. Water Glades 300 Condo Ass'n, 847 So.2d 1070, 1074 (Fla.Dist.Ct.App. 2003), and citing Grills v. Philip Morris USA, Inc., 645 F.Supp.2d 1107, 1122 (M.D. Fla. 2009), for the proposition that in Florida, causes of action for fraudulent misrepresentation and concealment have identical elements). The Plaintiff alleges that the Hospital intentionally represented that it had obtained the pre-authorization amount of $200 for the sleep study, knowing that it would seek to collect an amount far greater from the Plaintiff. Such representation of the price of $200 induced the Plaintiff to agree to undergo the sleep study, as alleged in the second amended complaint. The Hospital contends that Plaintiff has failed to allege a misrepresentation in that the Hospital only conveyed information it obtained from Plaintiff's insurer.[2] Paragraphs 52 and 53, however, allege more than a mere passing through of information, but rather urge that the Hospital knew the information was false at the time it was stated and made for the purpose of inducing the Plaintiff to undergo the study and the greater fees which would be collected by the

---

[2] See docket 20, para. 37 ("Defendant Memorial received pre-authorization from Plaintiff's insurance and stated that the Plaintiff's sole responsibility was a fixed amount of $200 which the Plaintiff forwarded prior to the study.").

Hospital. While these allegations may surely be difficult to prove, the Court finds them sufficient to state a claim for relief.[3]

To establish fraudulent concealment, the plaintiff must show that the defendants (1) concealed or failed to disclose a material fact; (2) knew or should have known the material fact should be disclosed; (3) knew concealment would induce the plaintiff to act; (4) had a duty to disclose the material fact; and (5) the plaintiff detrimentally relied on the misinformation. R.J. Reynolds Tobacco Co. v. Martin, 53 So.3d 1060, 1068 (Fla.Dist.Ct.App. 2010). The Hospital takes issue with paragraph 55 as conclusory in alleging that "Memorial knew that there was something wrong with the Plaintiff's raw data . . . ." The Hospital contends that Plaintiff should be required to allege how the Hospital knew or should have known the underlying data for the sleep study was inaccurate and, secondly, that the Hospital provided what it thought was correct study results, as opposed to erroneous results, as evidenced by the allegations of the second amended complaint.[4] The Court finds the fraudulent concealment claim confusing. The

---

[3] The Plaintiff here is alleging something different from the scenario in which a patient is told by a hospital or doctor's office that a procedure or study is pre-authorized and will cost a certain amount, and the hospital or doctor's office has been told this by the insurance company, only for the patient to later discover that the procedure or study was not covered by medical insurance as evidenced by the higher bill. Unlike the present case, no intentional misrepresentation is alleged under this hypothetical.

[4] See docket 20, paras. 22, 23, 25, 26 & 27.
> 22. Once the results were released by Defendant Memorial said results were simply broad generalizations and lacking the required medical specificity and also disorganized according to typical standard of care in preparing such reports.

second amended complaint seems to allege that the Hospital withheld records and raw data so that the Plaintiff would undergo more tests at Plaintiff's expense.  The Court finds the allegations concerning fraudulent concealment contradictory because Plaintiff claims on the one hand that the Hospital knowingly concealed raw data that had it been disclosed would have prevented the Plaintiff from paying for another study, while on the other hand, the Hospital readily disclosed the study results to the Plaintiff, which Plaintiff claims were obviously incorrect.  These allegations do not support a finding that Plaintiff detrimentally relied on misinformation.  The Plaintiff underwent another study presumably to confirm – either way – whether the study was valid.  Consequently, the Court grants the motion to

---

23. Additionally, even though Plaintiff had undergone three separate surgical procedures and obtained industry recognized proof of the effects of the surgical procedures Memorial's results were at approximately 50% worse than original baseline prior to treatment, a medical impossibility, clearly evidencing that Defendant Memorial's tests were wildly inaccurate and that Defendant Memorial had produced results that were false and or entirely misinterpreted.
25. Memorial's report indicated that Plaintiff should return for treatment at their facility and that Plaintiff should limit activity.
26. Plaintiff shared his study results with his treating surgeon who practices medicine at Stanford Hospital, Palo Alto, California.
27. Treating Surgeon conveyed to the Plaintiff that the interpreted results produced by Defendant Memorial (Plaintiff never had the raw data) did not make medical sense and that Plaintiff need[ed] to have another study performed, because Defendant Memorial's study was not medically sufficient by any reasonably accepted medical standard.

dismiss fraudulent concealment with prejudice because there is no way of reconciling these conflicting allegations.[5]

Plaintiff's claim under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* (The FDCPA), must be dismissed as to the Hospital because it is inapplicable to the creditors seeking to collect their own debts. The Hospital, under the allegations of the second amended complaint, is a creditor under the presumably true facts of this case. The FDCPA applies to debt collectors, not creditors who seek to recover their own debt. 15 U.S.C. § 1692k; Grow Fin. Fed. Credit Union v. Williams, No. 8:10-cv-1874-17-AEP, 2011 WL 1336405, at *4 (M.D. Fla. Apr. 7, 2011). When a hospital is collecting its own debt, it has been held not to qualify as a "debt collector" under the FDCPA. See Bleich v. Revenue Maximization Group, Inc., 239 F.Supp.2d 262, 264 (E.D.N.Y. 2002) (finding that a hospital "cannot be held liable as a bill collector" when it attempted to collect its own debt).

The claim brought pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the TCPA) stands because the second amended complaint alleges that Defendant Medicredit, as an agent of the Hospital, made a call to Plaintiff's cell phone without

---

[5] With respect to Plaintiff's claim under section 395.3025, Florida Statutes, and the Health Insurance Portability and Accountability Act on a theory of breach of fiduciary duty that the hospital owed to release the raw data collected in the study, the Court finds the allegations do not state a claim for relief. Plaintiff has cited no authority by the statutory framework alleged for the creation of a fiduciary duty to release raw data. In any event, the Hospital, according to the allegations of the amended complaint, did not wrongfully or inadvertently disclose confidential medical records.

express consent with an ATDS.[6] That the Hospital contends Plaintiff consented to such use is irrelevant for purposes of a motion to dismiss.

Plaintiff challenges paragraphs 35 and 36 as immaterial, impertinent and, scandalous under Federal Rule of Civil Procedure 12(f). The paragraphs unequivocally mention attempts to settle the dispute before this action was filed. Based on the implication of Federal Rule of Evidence 408, the paragraphs should be stricken. Cf. North Am. Biologicals Inc. v. Illinois Employers Ins., 931 F.2d 839, 841, modified on other grounds on reh'g, 938 F.2d 1265 (11th Cir. 1991) (excluding letter considered an inadmissible offer of settlement under Rule 408 and not material to establish the claim).

It is therefore **ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint (Dkt. 23) is **GRANTED** in part and **DENIED** in part. Only the claims for fraudulent misrepresentation and violations of the TCPA remain against the Hospital. The motion to strike is **GRANTED**. Paragraphs 35 and 36 are hereby **STRICKEN** from the second amended complaint. The Hospital shall file its answer and defenses to the remaining claims of the second amended complaint within fifteen (15) days.

It is further **ORDERED AND ADJUDGED** that the Plaintiff shall show cause in writing on or before February 26, 2016, why the case against the Defendant Medicredit, Inc, should not be dismissed without prejudice for failure to effect service of process on

---

[6] An ATDS is an "automated telephone dialing system." 47 U.S.C. § 227(1).

that Defendant within 120 days of the filing of the initial complaint as required by the version of Rule 4(m) of the Federal Rules of Civil Procedure in effect at the time of the filing of the initial complaint.  Failure to respond in a timely manner will result in the dismissal of Medicredit, Inc., from this case without prejudice and without further notice.

**DONE AND ORDERED** at Tampa, Florida, on February 12, 2016.


s/*Richard A. Lazzara*
**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**


**COPIES FURNISHED TO**:
Counsel of Record